WINDHAM,
*February,*
1838.

CYRUS WASHBURN, Executor of APPOLLOS CLAPP *v.* THOMAS W. TITUS and ELIJAH STEBBINS.

T. executed a bond to C., conditioned to "support and maintain the obligee, to the extent of $1700, and the interest accruing on the same, during his natural life, and to furnish him with food, apparel, &c., until the whole amount of said $1700 should be expended in his support." T. supported C. up to the decease of the latter, at which time a part, only, of the $1700 was expended;—Held, that the condition of the bond was fully performed, on the part of the obligor, and that a mortgage deed, from T. to C., conditioned for the performance of the condition of the bond, became thereby void.

EJECTMENT, for land in Vernon. Plea—not guilty, and issue, by agreement of parties, to the court.

On the the trial of the cause in the county court, it appeared, that on the 20th day of December, 1834, Appollos Clapp was the owner of the land, and, on that day, conveyed the same by deed, to the said Titus. And the said Titus, on that occasion, and as the consideration for said deed, executed and delivered to said Clapp a bond of that date, in the penal sum of $2,500, conditioned as follows;—

"That whereas, the above named Appollos Clapp has this " day deeded his farm, lying in said Vernon, consisting of " one hundred and twenty acres, more or less, for the con- " sideration of seventeen hundred dollars, for the support " and maintenance of the said Appollos, to Thomas W. Ti- " tus, who has agreed to support and maintain the said Ap-

"pollos, to the extent of said means and sum, and the inte-
"rest accruing on the same.—Now, if the said Thomas W.
"Titus shall well and truly maintain and support the said
"Appollos Clapp, on the said place in Vernon, or at such
"other place as the said Appollos or Thomas W. may agree
"upon, in sickness and in health, from this time, during his
"natural life, and shall, at all times, deport himself tenderly
"and respectfully towards the said Appollos, and shall fur-
"nish and supply him at all times with good and sufficient
"food, apparel, medicine, fire, lodging, room, and every thing
"proper and comfortable, according to his condition and sit-
"uation, and shall furnish him from time to time with all ne-
"cessary, proper and convenient money for his own benefit,
"use and expenditure, until the whole amount of the said
"consideration and amount of seventeen hundred dollars
"aforesaid, with the interest yearly accruing on the same,
"shall be fairly expended, as aforesaid, in said Appollos' sup-
"port ; then this obligation to be void, otherwise, to be and
"remain in full force and virtue."

The said Titus, also, on the same day, executed to said
Clapp a mortgage deed, or a deed conditioned as follows ;—

"That if I, the said Thomas W. Titus, my heirs, execu-
"tors, administrators, or assigns, shall well and truly pay, or
"cause to be paid to the said Appollos Clapp, and furnished
"and provided for him, his heirs, executors, administrators,
"or assigns, the maintenance and support of the said Appol-
"los Clapp, from the date of this instrument, during his nat-
"ural life, or till the whole of the above consideration and
"amount of seventeen hundred dollars, and the interest ac-
"cruing thereon, shall be fairly expended on his support ;
"and shall furnish and supply him, the said Appollos Clapp,
"at all times, with good and sufficient food, apparel, medi-
"cine, fire-wood, room, and everything proper and comforta-
"ble, according to his condition and situation, and shall fur-
"nish him from time to time with all necessary, proper, and
"convenient money, for his own benefit, use and expendi-
"ture, until the whole amount of seventeen hundred dollars
"aforesaid, with the interest yearly accruing on the same,
"shall be fairly expended, as aforesaid, in said Appollos' sup-
"port, according to the tenor and effect of my bond, bear-
"ing even date with these premises, and duly executed and

WINDHAM,
February,
1838.

Washburn,
Exr. of Clapp
v.
Titus et al.

" delivered to said Appollos, then this deed to be void ; oth- " erwise to be and remain in full force and effect."

It also appeared, that the defendant, Titus, entered upon the possession of said land, and the said Clapp resided with him, and was provided for and maintained by him, according to the stipulations in said bond and mortgage mentioned, un- til his decease, which was Oct. 28, 1835.

Titus, on the 28th day of January, 1836, deeded the premises to Stebbins, but continued in possession as the ten- ant of said Stebbins.

Upon these facts, the county court rendered judgment for the defendants, to which judgment the plaintiff eexcepted.

The opinion of the Court was delivered by

PHELPS, J.—We do not deem it necessary to spend time, in discussing the technical, and somewhat artificial rules, which may be supposed to bear upon this case. It is a ques- tion of construction merely, and when the intention of the parties, as it appears upon the deeds, is once ascertained, the effect of the instruments is too obvious to admit of ar- gument or doubt.

It seems to be agreed by the counsel, that the bond and deed are to be regarded as cotemporaneous, constituting one transaction, and as mutually qualifying and explaining each other, like the several parts of one instrument.

It is insisted on the part of the plaintiff, that, by the true construction of the contract, it was manifestly the intention of the parties, that the sum of seventeen hundred dollars should, at all events, be paid by the defendant, Titus, and if the whole amount should be expended, in the support of the plaintiff's testator, during his life, that a cause of action sur- vives to the executor, for the balance unexpended.

The defendants, on the other hand, insist, that the obliga- tion is in the alternative, and that it is discharged by perfor- mance of either alternative ; the undertaking was to support the testator during life, (which they insist has been done,) or so long as any portion of the sum of $1700, should re- main ; considering that sum, as the limit of the defendant's liability, and as the limitation, effectual only upon the contin- gency, that the testator survived the expenditure of the sum. Their construction of the contract is, then, briefly this, that the defendant Titus, shall support the said Clapp during his

natural life, provided, however, that if he should so long live, as that the said sum of $1700 shall have been expended in such support, the obligation of the said Titus shall thereupon cease.

WINDHAM,
*February*,
1838.

Washburn,
Exr. of Clapp
*v.*
Titus *et al.*

Both parties have resorted to a critical examination of the language of the two instruments, and of their grammatical construction. They are awkwardly written, and it is difficult perhaps to make sense of their phraseology without much latitude of construction.

The condition of the bond recites the conveyance by Clapp to Titus, " for the consideration of $1700,—for the support and maintenance of said Clapp," and that said Titus " has agreed to support and maintain the said Apollos, to the extent of said means and sum, and the interest accruing on the same." Here the principal thing is the maintenance and support. The undertaking is not to pay a given sum ; but there is a limit to such maintenance, to wit, that the expenditure shall not go beyond the amount specified. It is argued, however, that we are to take the words literally, and that we are to understand by them, that the expense *shall* go to that sum, as well as that it *shall not go* beyond it. But if we are to be thus nice, it is to be remembered, that the defendant is bound, thus far, to do nothing, except to maintain, &c., and it is only by means of a latitude of construction, that we can convert that duty into another and different one, to wit, an obligation to pay money. The contingency of the decease of the party to be supported, is not in terms provided for. That contingency, however, having happened, we are driven, in order to decide the question here raised, to supply the omission ; and we must do it, either by supplying, on the one hand, the expression, if the party so long live, or on the other hand, by adding a provision for the payment to the executor, of any balance which may remain unexpended, at the party's decease. In deciding this alternative, we cannot lose sight of the consideration, that the thing undertaken is the support of the party, and the expression, " to the extent of said means and sum," is used as qualifying or restricting the duty within a certain limit. If we are to understand this expression, as the plaintiff insists, the literal reading of the contract is, that seventeen hundred dollars are to be expended in the support of the party, whether dead

WINDHAM,
February,
1838.

Washburn,
Exr. of Clapp
v.
Titus et al.

or alive. Now it is hardly to be supposed that the parties intended that maintenance should be afforded to a dead man. It may have been their intention, that the balance unexpended, at the decease of the testator, should constitute a debt payable to the executor; but if so, it is somewhat strange that they did not say so. At all events, we do not feel warranted in resorting to the absurdity of construing the contract, so as to require maintenance to be furnished the party after his decease, in order to lay the foundation for such an inference.

The operative part of the condition is very inaccurately drawn. It requires the obligor in the first place, to maintain and support the obligee, *during his natural life.* It then proceeds, " *and* shall furnish and supply him, at all times, with good and sufficient food, apparel, &c., (enumerating more particularly what is intended, by maintenance and support,) until the whole amount of seventeen hundred dollars, with the interest, &c. shall be fairly expended, in said Apollos' support."

There is an incongruity in this, which, if we are to understand each branch of the condition in its strict literal sense, unqualified by the other, can never be got rid of. The first clause requires support, *during the party's life.* The second requires what is implied in "support," *while the specified sum holds out.* Now, which of these shall govern? If we give full effect to each, then the obligation was to support the testator, until the whole sum is exhausted, whether he live so long or not, and also during his life, whether the sum were exhausted or not. This construction is not contended for by the plaintiff. He admits that the obligation ceases upon the exhaustion of the specified amount. If so, then the latter clause qualifies the former, and if this be so, is it not true *e converso,* that the former qualifies the latter? This view of the subject removes the incongruity. By considering the two clauses in connexion, and as mutually qualifying each other, they are made to harmonize. The support was to be furnished, during the natural life of the party, to the extent specified;—not after his decease, nor beyond the limit stipulated. This construction harmonizes with the view already taken of the recital in the bond.

If I were permitted to conjecture the cause of the appa-

WINDHAM,
February,
1838.

Washburn,
Exr. of Clapp
v.
Titus et al.

rent incongruity in the instrument, I should assert that the word '*and*' was inadvertently inserted in lieu of '*or*,' which, I believe, was the word intended. This substitution of *or* for *and*, if we are at liberty to make it, will at once settle the true construction. The obligation will then endure, during the life of the party, or until the given amount is expended.

This construction may appear artificial, but that it is the true one, will appear from a reference to the condition of the mortgage. At the same time, we shall then see that the above conjecture, as to the inadvertent substitution of *and* for *or*, by the scrivener, is well founded.

It is not to be supposed, that the parties intended that these two instruments should exhibit different contracts; but, on the contrary, it must be conceded that they undoubtedly intended that both should present one and the same con tract, and they doubtless so understood them. Hence the counsel, on both sides, have discussed the case upon the assumption, that the intent is to be gathered from the two instruments conjointly.

The deed is conditioned for the support of the said Appollos Clapp, during his natural life, *or* until the whole of the above amount, &c. is expended. Here we find the word *or* in lieu of *and*. By the use of the former instead of the latter, as in the bond, the contract is clearly and intelligibly expressed. It is a condition in the alternative, admitting neither difficulty or doubt. If then, we assume, as I think we must, that the two conditions were intended to be, and were supposed by the parties to be, in fact, alike, the question as to the bond is settled.

The remaining clause, in the condition of the deed, is nearly if not quite in the precise words of that in the bond. It is argued from this, by the plaintiff, that the obligation subsists at all events, until the full sum mentioned shall be expended. The reasoning, however, which has been adopted, in reference to the bond, will apply here. If we are to understand this last clause to be coupled with either horn of the preceding alternative, by the word *and*, and are also to understand that word in its cumulative sense, we are driven to a construction which both parties repudiate, and which

WINDHAM,
February,
1838.

Washburn,
Exr. of Clapp
v.
Titus et al.
makes nonsense of the instrument. Thus, if we attach this clause to the first branch of the alternative, the condition will require of the defendant to support the testator during his life, and further, to expend in his support the additional sum of $1700. If we refer it to the last branch, in the same sense, then the two clauses become mere idle repetition. The true construction is this, the clause is merely a more particular specification of what is intended by maintenance and support, and must be understood as qualified by the alternative already stated.

It is worthy of remark, that whenever the consideration of the deed, or the sum of seventeen hundred dollars, is mentioned, or the obligation of the defendant spoken of, it is treated as merely an obligation to support and maintain the testator, and there is no other *payment* even alluded to, except what is to be expended in his support. This consideration tends strongly to support our construction. It is not to be imagined that such a contract should have been made, without taking into consideration the contingency of the party's decease, before the sum specified might be expended ; and it is scarcely possible, if the parties had intended that a claim should survive to the executor, that no provision should have been made for the payment to him, nor for ascertaining the unexpended balance.

It is true the words, "heirs executors," &c. are introduced into the mortgage deed, but they are not used in the condition of the bond. The inference to be drawn from the use of these words, at all, is not a very strong one. The words are generally mere surplusage, and, in most instances, are introduced rather as a matter of form, or from habit, than because any special importance is attached to them. The omission of these words in the condition of the bond, in this case, shows that they are not regarded as having the important meaning, which the plaintiff now seeks to impart to them. Moreover, the duty created by the instrument could not, from its nature, be discharged in terms to the heir or executor. The most which he could receive, would be a commutation or equivalent for the duty, and if such commutation was intended, it is incomprehensible that it was not provided for.

Upon the whole, although some expressions in these in-
struments might, if standing alone, lead to a different con-
clusion, yet, taking the whole together, and regarding them
as reciprocally qualifying and explaining each other, we are
driven to this result. The condition of the conveyance is
satisfied, either by supporting the testator during his life,
or by expending the full sum of seventeen hundred dollars
in his support, provided he lives so long as to require it.

The former having been done, the deed is satisfied, and
the plaintiff is not entitled to recover.

The Judgment of the county court is, therefore, af-
firmed.

*Keyes & Bradley*, for plaintiff.

*John Phelps*, for defendant.